IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NVR, INC., d/b/a/ RYAN HOMES, : <br> and ARGONAUT INSURANCE GROUP : <br>  : <br> v.  : <br>  : <br> SELECTIVE INSURANCE CO., MERCER : <br> MUTUAL INSURANCE CO., A&E FRAMING : <br> CONTRACTORS, PEDRO LOPES MADEIRA : <br> and EVARDE DESOUZA  : | CIV. NO. 06-1446 |

**Diamond, J.**                                                                                       September 10, 2007

**M E M O R A N D U M**

     In this declaratory judgment action, I must determine whether Defendant Mercer Mutual Insurance Company is obligated to provide coverage to a construction subcontractor whose employee suffered severe injuries in a job-related accident. The involvement of other subcontractors and insurers – and the pendency of an underlying state court personal injury action – initially confused this matter. The parties have now stipulated to all material facts, however, and submit the matter for a verdict and the entry of judgment. I conclude that the Mercer policy excludes the coverage Plaintiffs seek. Accordingly, I return a verdict in favor of Mercer and enter judgment in its favor. In support, I offer the following factual findings and legal conclusions. See Fed. R. Civ. P. 52

**I.     FINDINGS OF FACT**

     Plaintiff NVR, Inc. is a Virginia housing development corporation. (Joint Stip. Facts at para. 1.) Plaintiff Argonaut Insurance Group -- a California Corporation -- insured NVR under a commercial general liability policy that provided $1 million in primary limits of coverage. (Id. at para. 2.) American International Specialty Lines Insurance Company (an "interested party")

1

also insured NVR under an umbrella commercial liability policy that provided $25 million in limits of coverage above Argonaut's primary limits of coverage. (Id. at para. 8.)

A&E Framing was a New Jersey corporation -- with its principal place of business in New Jersey -- that provided construction framing for residential homes. NVR, as prime contractor, hired A&E to perform framing work on a housing development in this District. (Id. at paras. 3, 31.) Defendant Selective Insurance, a New Jersey corporation -- with its principal place of business in New Jersey -- insured A&E under a commercial general liability policy that provided $1 million in primary limits of coverage. (Id. at para. 4.) Under the terms of the Master Agreement between A&E and NVR: (1) A&E was required to add NVR as an additional insured on its general liability policy issued by Selective; (2) the coverage afforded to NVR under the Selective policy was primary, and any insurance maintained by NVR was excess; (3) A&E was required to cause each of its subcontractors to maintain general liability insurance and to name NVR as an additional insured; and (4) A&E was required to indemnify NVR from any liability caused by the negligence of A&E and its subcontractors. (Id. at para. 34-36.)

A&E subcontracted its framing work to Defendant Pedro Lopez Madeira (trading as RM Company), a New Jersey resident with his principal place of business in New Jersey. (Id. at paras. 5, 19.) Defendant Mercer Mutual Insurance Group -- a New Jersey Corporation with its principal place of business in New Jersey -- insured Madeira under a commercial general liability policy that provided $1 million in primary limits of coverage. (Id. at para. 6, 37.) Under the terms of the agreement between A&E and Madeira, A&E was added as an additional insured to the policy issued to Madeira by Mercer. (Id. at para. 18.)

Defendant Evarde DeSouza, a New Jersey resident and citizen, and an employee of Madeira, was seriously injured in 2003 while framing a roof at the NVR housing development. (Id. at paras. 21-22.) In 2005, DeSouza brought a negligence claim against NVR and A&E in

the Philadelphia County Common Pleas Court. DeSouza v. NVR, Inc. et al, January Term 2005 No. 00144. (Id. at paras. 20, 23-24.)

DeSouza's state lawsuit was settled for $8 million, preserving Plaintiffs' claims in the instant action. The settlement was funded as follows: NVR provided $500,000; Argonaut provided $500,000; Selective provided $1 million on behalf of A&E and NVR; and AISLIC provided $6 million on behalf of NVR. (Id. at para. 50.) A&E did not participate in the settlement because it no longer conducts business. (Id. at para. 52.) Mercer did not participate in the settlement because it denied any obligations to defend and indemnify its additional insured, A & E. (Id. at para. 51.)

## II.   PROCEDURAL HISTORY

On April 5, 2006, NVR initiated this action, seeking a declaratory judgment -- in light of DeSouza's state court lawsuit -- as to the contractual rights and obligations of A&E, Selective (A&E's insurer), Madeira, and Mercer (Madeira's insurer). Declaratory Judgement Act, 28 U.S.C. § 2201 *et seq.*

A&E asserted crossclaims against Madeira and Mercer, alleging that: (1) it entered into an agreement with Madeira pursuant to which Madeira agreed to name A&E as an additional insured in his Mercer policy; (2) A&E is an additional insured under that Mercer policy; and (3) A&E is entitled to contribution and indemnity from Mercer.

A&E insurer Selective also asserted crossclaims against Madeira and Mercer, alleging that: (1) the policy Selective issued to A&E is excess over Mercer's policy; (2) Selective has provided A&E with a defense in the underlying state action and so is entitled to reimbursement from Mercer; and (3) Selective is entitled to contribution and indemnity from Mercer.

Mercer admitted that Madeira, Mercer, and A&E entered into an agreement pursuant to which A&E became an additional insured under the policy Mercer issued to Madeira, but denied that A&E is entitled to coverage in the underlying DeSouza action.

On May 15, 2007, I granted Mercer's Motion to Dismiss Complaint and Crossclaims Without Prejudice as to Pedro Lopes Madeira because NVR had never served him with the Complaint.

Although NVR named DeSouza as a Defendant, apparently it never served him with its Complaint, nor does it seek any relief with respect to him.

In litigating the instant matter, Selective confirmed that under the Master Agreement, NVR is an additional insured on the policy Selective issued to A&E.  Accordingly, Selective participated in the settlement of the underlying action on behalf of A&E and NVR.  Selective and A&E also entered into a settlement with NVR, Argonaut, and AISLIC in the instant action: (1) Selective reimbursed NVR $150,000 in costs incurred in defending itself in the underlying action; and (2) Selective and A&E assigned to NVR and AISLIC any rights that Selective and A&E had to pursue claims against Madeira and Mercer.

On May 30, 2007, the Parties submitted Joint Stipulated Facts, and on June 15, 2007, each side submitted a brief in support of judgment in its favor.

NVR, Argonaut, A&E, and Selective (collectively, "NVR") contend that Mercer's policy provides coverage for the costs of A&E's defense and settlement in the underlying action. Mercer counters that its policy explicitly excludes coverage for bodily injuries to Madeira's employees.

**III.    THE MERCER MUTUAL INSURANCE POLICY**

Both sides agree that my decision here will turn on how I interpret both the policy Mercer issued to Madeira and the Endorsement by which A&E became an "additional insured." Accordingly, I will set out the pertinent provisions of these documents.

The main policy's "Declarations" provision – in which Mercer defines the terms of the policy – names Pedro Lopes Madeira and RM Company as Mercer insureds. (Joint Stip. Facts at para. 37.) Thus, the terms "you" and "your" in the Mercer policy refer to Madeira and RM. (Id. at para. 37.; Ex. J.)

The Mercer policy provides limits of $1 million per occurrence. (Joint Stip. Facts at para. 48.) Mercer admits that DeSouza's accident -- if covered – would constitute one occurrence under its policy. (Id.)

"Part II A – Main Liability Coverage" of the Mercer policy provides:

```
COVERAGE E - LIABILITY TO OTHERS

A.     We pay for the benefits of insureds, up to
       the applicable limit(s) of liability (See
       Part II D) shown in the Declarations, damage
       insured under the policy.
```
(Ex. J.)

"Part II C – Liability Not Insured" of the Mercer policy sets out an extensive list of coverage exclusions: alcoholic beverage, automobile/aircraft/watercraft, business activities/business risk, contractual liability, willful harm or knowing endangerment, a mobile equipment, pollution/environmental damage, premises/other property, professional activities, products/completed operations hazards, specified persons (i.e. workers compensation/disability beneficiaries), sports activities, and medical services/general medical. Of particular significance to the instant case is the following exclusion:

5

```
5.   EMPLOYEE, EMPLOYMENT, AND RELATED
     INJURY EXCLUSIONS

* * *
B.   We do not insure bodily injury to any of your
     employees arising out of and in the course
     of:

     1.   Employment by you; or

     2.   Performing duties related to the conduct
          of your business/operations.
```
(Ex. J.)

Mercer policy Section 10 "Other Insurance Party I" of the "Common Conditions – Parts I and II" also provides:

```
A.   This insurance is excess insurance over other
     insurance you may have applicable to the lose
     . . .
```

(Ex. J.)

The Mercer policy includes an Endorsement titled "Blanket Additional *Insured* - Contractors," that provides coverage to "additional insureds." Although A&E is not named as an insured in the "Declarations" section of the main policy, the parties agree that A&E is an "additional insured" under the Blanket Additional Endorsement. (Joint Stip. Facts at para. 38; Ex. D, para. 42; Ex. J.) The Endorsement provides in its entirety as follows:

> *This endorsement extends the definition of insured to include any person or organization who you have agreed to name as an additional insured in a written contract.*
>
> *The provisions of this endorsement apply only when the endorsement number I listed in the Declarations. Except as provided below, all other provisions in this police remain unchanged.*
>
> *The definition of insured in the Glossary is amended to include the following as insureds here:*

6

>   *Insured* includes any person or organization whom *you* have agreed in a written contract, executed prior to a loss, to name as an additional *insured* but only with respect to liability arising out of *your* work for that additional *insured*.
>
>   With respect to the coverage provided by this endorsement, the following additional condition applies:
>
>   1.  Any coverage provided by this amendment is excess over any valid and collectible insurance unless *you* have agreed in a written contract to have coverage apply on a primary basis or contributory basis.
>
>   With respect to the coverage provided by this endorsement, the following exclusions apply:
>
>   1.  This insurance does not apply to any person or organization for whom *you* have purchased Owners and Contractors Protective Liability coverage whether from *us* or from any other company.
>
>   2.  This insurance does not apply to *bodily injury, property damage or personal injury/advertising injury* arising out of the rendering or failure to render any professional services by *you* or for
>
>       a.  The preparing, approving or failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and
>
>       b.  Supervisor, inspection or engineering services.

(Ex. K.)

## IV.  CONCLUSIONS OF LAW

   A.  **Legal Standards**

7

Although DeSouza sustained his injuries in Pennsylvania, the parties agree that New Jersey law governs this coverage dispute. Because it does not appear that there is a "true conflict" between New Jersey and Pennsylvania insurance law, I do "not have to engage in a choice of law analysis." Hammersmith v. TIG Ins. Co., 430 F.3d 220, 229 (3rd Cir. 2007). Compare Reliance Ins. Co. v. Armstrong World Indus., Inc., 678 A.2d 1152, 1158 (N.J. Super. Ct. App. Div. 1996) (internal citations omitted); Argent v. Brady, 901 A.2d 419, 424 (N.J. Super. Ct. App. Div. 2006) with Madison Construction Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999). In any event, A&E, RM, and Mercer are New Jersey corporations with their principal places of business in New Jersey. Madeira is a New Jersey citizen with his principal place of business in that state. DeSouza is a citizen and resident of New Jersey. Finally, the Mercer policy was issued in New Jersey. In these circumstances, I agree that New Jersey "has the 'greater interest under in the application of its law'" to this case. See Hammersmith, 480 F.3d at 231 (quoting Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970)).

Under New Jersey law, "[t]he burden is on the insured to bring the claim within the basic terms of the policy. The carrier, however, bears the burden of establishing that any matter falls within the exclusionary provisions of the policy." Reliance Ins. Co. v. Armstrong World Indus., Inc., 678 A.2d 1152, 1158 (N.J. Super. Ct. App. Div. 1996) (internal citations omitted).

In construing an insurance contract, my task "is to search broadly for the probable intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policy." Argent v. Brady, 901 A.2d 419, 424 (N.J. Super. Ct. App. Div. 2006) (quoting Sinopoli v. N. River Ins. Co., 581 A.2d 1368, 1370 (N.J. Super. Ct. App. Div. 1990)). When interpreting the contract, I am "required to give meaning to every word in the contract rather than leave a portion of the writing useless or inexplicable." Fitts v. Chase Manhattan Mortg. Corp., 2006 WL 3432296, at *4 (N.J. Super. Ct. App. Div. Nov. 30, 2006). "The court

makes the determination whether a contractual term is clear or ambiguous." Schor v. FMS Fin. Corp., 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002). A contractual ambiguity exists "if the terms of the contract are susceptible to at least two reasonable alternative interpretations. Schor, 814 A.2d at 1112 (quoting Nester v. O'Donnell, 693 A.2d 1214, 1220 (N.J. Super. Ct. App. Div. 1997)). Where an insurance contract is clear and unambiguous, I am bound to enforce it:

> Only where the language is ambiguous does the doctrine of reasonable expectations come into play, permitting a construction that favors such expectations of an insured. This principle has particular force when the meaning of an exclusionary clause is at issue, and when an ambiguity arises in this context, the clause must be strictly construed against the insurer so that reasonably anticipated coverage is provided.

Argent, 901 A.2d at 424 (internal citations omitted).

### B.   Discussion

As set out above, the Endorsement includes a coverage condition and two coverage exclusions, none of which is germane to the instant dispute. (Ex. K.) Rather, Mercer seeks to disclaim coverage under the main policy's "employee exclusion" alone. Thus, if that exclusion applies to the "additional insured" coverage that Mercer provided to A&E, then Mercer is not responsible for the costs A&E and Selective incurred in connection with the underlying DeSouza suit. If, however, I conclude that the "employee exclusion" does not apply, then I must determine whether the coverage provided by Mercer to A&E is "excess" to the coverage provided by Selective.

NVR asks me to rule that the "employee exclusion" does not apply because: (1) the Endorsement expressly sets forth the *only* applicable exclusions; and (2) the "employee exclusion" applies only to bodily injuries sustained by "your" employees, and DeSouza was an employee of Madeira, not A&E. Both contentions are meritless.

### *1.      The Blanket Additional Endorsement Exclusions Do Not Replace The Main Policy Exclusions.*

The Endorsement includes one coverage condition and two coverage exclusions: 1) "with respect to the coverage provided by this endorsement, the following *additional* condition applies. . ."; and 2) "with respect to the coverage provided by this endorsement, the following exclusions apply: . . ."   (Ex. K.) (emphasis supplied).   NVR contends that because the Endorsement exclusions are not described as "additional," they necessarily replace all the exclusions listed in the main policy.

NVR ignores the following prefatory statement in the Endorsement:

```
Except as provided below, all other provisions
in this policy are unchanged.
```

(Ex. K.)  NVR argues that this provision simply means that unless otherwise provided, the actual language of the main policy remains "unchanged."  (Oral Argument Tr. 21:17-22:17, Aug. 9, 2007).  Such a construction would render the prefatory provision entirely superfluous.  Yet, under New Jersey law, when interpreting a contract, I am "required to give meaning to every word in the contract rather than leave a portion of the writing useless or inexplicable."  Fitts v. Chase Manhattan Mortg. Corp., 2006 WL 3432296, at *4 (N.J. Super. Ct. App. Div. Nov. 30, 2006).  The only "meaning" the prefatory provision reasonably could have is that unless the Endorsement alters, supplants, or extinguishes provisions of the main policy, those provisions – including exclusions – remain viable.

This interpretation is not only consistent with the language of the Mercer policy, it comports with the clear intentions of Madeira and A&E.  NVR asks me to conclude that the coverage that Mercer provided to A&E -- a non-premium paying "additional insured" -- is vastly broader than the coverage it afforded to Madeira – the premium-paying named insured.  Under NVR's interpretation of the Endorsement, the myriad coverage exclusions set out above are

eliminated from the policy as applied to A&E, including the "employee exclusion," and exclusions relating to alcoholic beverages, automobile related harm, disability benefits, unemployment compensation, worker's compensation, willfully harmful acts, and pollution. Such a reading of the Endorsement defies common sense.

In these circumstances, I conclude that the main policy exclusions "are unchanged," because neither the Endorsement nor the parties' intentions impugn their viability. See Rosario v. Haywood, 799 A.2d 32, 38 (N.J. Super. Ct. App. Div. 2002) ("[C]onstruing insurance policies, as with any contract, requires a broad search 'for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies.'") (quoting Royal Ins. Co. v. Rutgers Cas. Ins. Co., 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994)).

### 2. The "Employee Exclusion" Applies To The Coverage Provided A&E Framing.

NVR next contends that even if the main policy exclusions of the main policy are unchanged, the "employee exclusion" does not apply here because, by its terms, that exclusion does not apply to A&E. Once again, I disagree.

Under the "employee exclusion," Mercer does not "insure bodily injury to any of *your* employees arising out of and in the course of: (1) employment by *you;* or (2) performing duties related to the conduct of *your* business/operations." (Ex. J.) "You" and "your" "refer to the *insureds* named in the Declarations: *first named insured* is the *insured* named first in the Declarations." (Ex. J.) As stated earlier, the "Declarations" provision – in which Mercer defines the terms of the policy – names Pedro Lopes Madeira and RM Company as Mercer insureds. (Joint Stip. Facts at para. 37.) Thus, the terms "you" and "your" in the Mercer policy refer to Madeira and RM. (Id. at para. 37.; Ex. J.)

NVR argues that the "employee exclusion" does not apply to A&E's coverage because DeSouza was an employee of Madeira, not A&E.  NVR confuses the party seeking coverage (A&E) with the employees whose injuries are excluded from coverage.  It is undisputed that the "employee exclusion" applies to the employees of Madeira.  (Doc. No. 122 at 8; Doc. No. 121 at 20-24; Ex. J).  It is also undisputed that DeSouza was a Madeira employee.  (Joint Stip. Facts at para. 21; Doc. No. 122).  Thus, coverage for injuries to DeSouza are excluded under the policy, regardless of whether the coverage is claimed by Madeira or A&E.

## CONCLUSION

Mercer has sustained its burden to show that its policy excludes the coverage NVR seeks. Accordingly, Mercer is not liable for the defense and indemnification costs incurred by NVR in connection with the DeSouza state court litigation.  In light of my decision, I need not determine whether the Mercer coverage is "in excess" to that otherwise provided.

## V E R D I C T

I return a verdict in favor of Defendant Mercer Mutual Insurance Company.

        BY THE COURT.

        /s/ Paul S. Diamond

        _____
        Paul S. Diamond, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NVR, INC., d/b/a/ RYAN HOMES,** | : | |
| **and ARGONAUT INSURANCE GROUP** | : | |
| | : | |
| v. | : | CIV. NO. 06-1446 |
| | : | |
| **SELECTIVE INSURANCE CO., MERCER** | : | |
| **MUTUAL INSURANCE CO., A&E FRAMING** | : | |
| **CONTRACTORS, PEDRO LOPES MADEIRA** | : | |
| **and EVARDE DESOUZA** | : | |

## O R D E R

AND NOW, this 10th day of September, 2007, it is ORDERED that Judgment is hereby entered in favor of Defendant Mercer Mutual Insurance Company and against Plaintiffs NVR, Inc. and Argonaut Insurance Group and Defendant Selective Insurance Company.

The Clerk's Office shall close this case for statistical purposes.

        IT IS SO ORDERED.

        /s/ Paul S. Diamond

        _____
        Paul S. Diamond, J.